IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RIGOBERTO TOSCANO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-cv-216-JPG-SCW |
| | ) |
| WEXFORD HEALTH SOURCES, DR. | ) |
| SHAH, DR. OSMUNDSON, | ) |
| | ) |
| Defendants. | |

REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

INTRODUCTION

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff filed his complaint against Defendants for deliberate indifference in treating his bilateral inguinal hernia (Doc. 10). This matter is currently before the Court on Plaintiff's motion for preliminary injunction (Doc. 26). Defendants filed a response (Doc. 33). Plaintiff filed a reply brief (Doc. 42). The matter has now been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge J. Phil Gilbert pursuant to **28 U.S.C. §§ 636(b)(1)(B) and (c)**, **Federal Rule of Civil Procedure 72(b)**, and **Local Rule 72.1(a)**. The undersigned held a hearing on August 1, 2016. Based on the following, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for preliminary injunction (Doc. 26).

## FINDINGS OF FACT

### A. Factual Background

Plaintiff's complaint, as narrowed by the Court's threshold order, alleges that Plaintiff injured his groin in 2015 while playing basketball at Robinson Correctional Center (Doc. 10, p. 2). He submitted a sick call request and was diagnosed by Defendant Shah with a muscle strain and provided ibuprofen. Plaintiff maintains that his pain did not subside with the treatment (*Id.*). Plaintiff was later seen by Dr. Osmundson, another Defendant, and was diagnosed with a hernia, but Osmundson refused to do anything for Plaintiff's condition (*Id.*). Plaintiff alleges that he continued to suffer from pain and was not provided with any additional pain medication (*Id.*). In December 2015, Plaintiff was referred to Central Illinois Radiological who diagnosed Plaintiff with bilateral inguinal hernias (Doc. 10, p. 2). Plaintiff alleges that this condition can only be treated with a medical procedure but Wexford Health Sources refused the procedure over cost concerns (*Id.*).

Subsequent to Plaintiff filing his complaint, he filed the instant motion for preliminary injunction (Doc. 26). Plaintiff argues that he has not received proper treatment for his hernias and has been in continuous pain which only an operation can remedy (*Id.*). Defendants responded to the motion indicating that in November 2015, Plaintiff told the healthcare staff that his work in the commissary aggravated his hernias and he requested a "lay-in" which was granted (Doc. 33, p. 2). Plaintiff underwent an ultrasound in December 2015 which determined that the hernias were small and,

according to Dr. Shah, did not require surgery, which was elective and not medically necessary.

### B. Preliminary Injunction Hearing

On August 1, 2016, the undersigned held an evidentiary hearing regarding Plaintiff's request for injunctive relief. At the hearing, Plaintiff testified that he first hurt his groin in 2015 and was seen by Vipin Shah in March 2015. Plaintiff testified that while working in the kitchen, he received Tylenol until he was seen by the doctor, but he did not get any further medication because he was told that the healthcare unit did not do anything for hernias. He did receive ibuprofen at one point but only for thirty days. He received the Tylenol in June 2015 from a nurse. Neither medication helped the pain. He put in a sick call request in February 9, 2016 and was seen by a nurse, but she only weighed him and did not refer him to the doctor. She returned his co-pay, which Plaintiff testified was demonstrated by the sick call slip he had in his possession, but she did not do anything further as she told Plaintiff they do not do anything for hernias. She did not give him medication at that time. Plaintiff testified that he did not go back to sick call after February 2016 because the nurse did not do anything for him and she said he would not be referred to the doctor. Plaintiff did not try to go back for further care.

Plaintiff testified that he has been in pain since March 2015. Although the pain is not constant, it comes and goes and he experiences pain which lasts four to five hours, five to six times a week. Plaintiff testified that when he lies in bed and tries to either sit

up or raise his legs, the movement can trigger pain in his abdomen. The movement also sometimes causes a bulge to protrude from his stomach which he is able to push back into his stomach, although it is very painful. The pain can last four to five hours and it comes on suddenly. It is usually caused by certain movements, including lifting, bending over, sitting up from a laying position, or lifting his legs while lying down. He doesn't always experience a bulge protruding from his abdomen but he always experiences pain.

Dr. Vipin Shah also testified at the hearing. Shah is a doctor at Robinson Correctional Center and has been at the prison since January 2016. He first saw Plaintiff on January 7, 2016 to review the findings from the ultrasound which Plaintiff received. At that time, he examined Plaintiff and found no palpable signs of a hernia. The ultrasound showed only small bilateral hernias. However, when Shah palpitated the area with his hands, he felt no swelling or bulging which would indicate that Plaintiff's intestines were protruding through the hernia. Shah advised Plaintiff not to lift over twenty pounds and to lose weight. Plaintiff complained about pain in his right side, but Shah did not order medication because Plaintiff had not complained of pain in a long time and the hernia was not palpable. Plaintiff only stated he had pain sometimes which Shah did not consider a serious pain, warranting prescription medication.

Shah again saw Plaintiff on January 11, 2016 for the ultrasound report. Shah believes this was due to a scheduling error as Shah had already reviewed the ultrasound previously with Plaintiff but he went ahead and physically examined Plaintiff on that

day.  Again, Shah found no palpable hernia.  He again told Plaintiff that he should lose weight and to increase his fiber in order to reduce constipation.  Plaintiff had previously complained of constipation and the abdominal pressure from the condition can worsen a hernia.  Plaintiff only told Shah that he had pain on and off.

Shah saw Plaintiff again the week before the hearing to make sure that he had not missed a condition and to verify that the hernia was still non-palpable.  He checked Plaintiff's vital signs and found no signs of swelling.  Plaintiff's cough reflex was also negative.  During the cough reflect test, Shah placed his hands on the area in question and had Plaintiff cough to determine if there was any bulging in the abdomen caused by the pressure from the cough.  Shah did not feel any bulging or weakness in the abdomen.  Sometimes with a hernia during palpitation, Shah testified that one can feel a patient's stomach contents through the hernia, but this was not the case with Plaintiff.  Plaintiff also did not complain of pain or ask for pain medication.  If Plaintiff had come in and complained of frequent pain which Plaintiff experienced multiple times a week, Shah testified that he would have considered pain medication at that point.  But Shah testified that Plaintiff did not complain of this issue.  Shah also did not believe, in his medical opinion, that Plaintiff would experience the sharp pain that lasted several hours with Plaintiff's condition.  It is not common for a person to have sharp pain that lasts hours and then goes away with a hernia like Plaintiff's.  The pain with a hernia, according to Shah, is either constant or lasts for a short period of time.  Shah testified that other than the times he saw Plaintiff in January 2016, and the appointment with him

the week prior to the hearing, Plaintiff had no interactions with Dr. Shah.

Defendants also submitted a copy of Plaintiff's medical records prior to the evidentiary hearing. The records indicate that Plaintiff was seen by a nurse on June 3, 2015 for pain in his abdomen. The nurse found no anatomical abnormalities or signs of a hernia. Plaintiff was instructed to avoid heavy lifting and was provided with acetaminophen. He was seen by a doctor on June 16, 2015 for groin pain and was again provided with Tylenol. According to the medical records, Plaintiff next appeared in the healthcare unit on November 6, 2015 complaining that he had a hernia which was aggravated by his work in the commissary. Plaintiff was provided with ibuprofen and was ultimately sent for an ultrasound which was taken on December 4, 2015. The report from that evaluation determined that Plaintiff had small bilateral inguinal hernias. Plaintiff saw Shah to review the ultrasound on January 7, 2016 as Shah testified and was seen again by Shah on January 11, 2016.

As Plaintiff testified that he was seen by the nurse on February 9, 2016 and had a sick call slip reflecting the visit, the Court directed Plaintiff to provide the Court with a copy of the slip. The undersigned also directed Defendants to provide the Court with the medical records from Shah's most recent appointment with Plaintiff.

### C. Additional Medical Records

As directed by the Court, Plaintiff provided a copy of the co-pay slip which he received for his February 9, 2016 encounter with the nurse (Doc. 48). The slip indicates that Plaintiff was seen at Robinson for medical, dental, vision, and mental health care

and that he was charged $5.00 (Id.). Defendants were also ordered to provide the Court with a copy of Plaintiff's last visit with Dr. Shah. Defendants provided a copy of the medical record which shows that Plaintiff was seen by Shah on July 28, 2016 (Doc. 46-2).

## CONCLUSIONS OF LAW

### A. Preliminary Injunction Standard

Injunctions are extraordinary equitable remedies that are to be granted in civil cases only when specific criteria are clearly met by the movant. *Mazurek v. Armstrong,* **520 U.S. 968, 972 (1997).** The plaintiff must show four elements for an injunction: (1) plaintiff is likely to succeed on the merits; (2) without an injunction irreparable harm against the plaintiff is likely; (3) the harm likely to be suffered by the plaintiff would be greater than the harm the injunction would inflict on defendants; and (4) the injunction is in the public interest. *Id.* The greater the likelihood that the plaintiff will succeed on the merits of the case, the less significant the likely harm against the plaintiff must be in relation to the harm the defendant will likely suffer due to an injunction. *Id.* According to the Prison Litigation Reform Act (PLRA) injunctions in the prison context must be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C.A. § 3626.** Courts may issue preliminary injunctions only on notice to the adverse party. **Fed. R. Civ. P. 65(a)(1)**.

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the

corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. §3626(a)(2).** *See also Westefer*, **682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, **130 F.3d 293, 295 (7th Cir. 1997).** Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* **(citing** *Jordan v. Wolke*, **593 F.2d 772, 774 (7th Cir. 1978)).** *See also W.A. Mack, Inc. v. Gen. Motors Corp.*, **260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").**

### B. Analysis

Here, the undersigned finds that Plaintiff is not entitled to the injunctive relief that he seeks, namely an appointment with a specialist and a procedure to fix his hernias, because Plaintiff has not shown a likelihood of success on the merits. Plaintiff alleges

that Defendants are being deliberately indifferent to his condition and pain because they will not fix his hernias. Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is required to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, 414 F.3d at 653. The plaintiff need not show the physician literally ignored his complaint, just that the physician was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Courts give deference to physicians' treatment decisions, since "there is not one proper way to practice medicine, but rather a range of acceptable courses." *Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008). A doctor who chooses one routine medical procedure over another does not violate the Eighth Amendment. *McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010). *See also Estelle*, 429 U.S. at 107 (whether additional diagnostic techniques or treatments were needed was a "classic example of a matter for medical judgment."). However, persisting in a course of treatment known to be ineffective states a claim under the Eighth Amendment. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (finding

**deliberate indifference where medical defendants persisted in a course of conservative treatment for eighteen months despite no improvement).** Deliberate indifference may also be shown when a medical provider refuses to refer a patient to a specialist for treatment of a painful medical condition that clearly requires a referral. *See Berry v. Peterman*, **604 F.3d 435, 440 (7th Cir. 2010);** *Snyder v. Hayes*, **546 F.3d 516, 526 (7th Cir. 2008).**

Here, however, Plaintiff has not shown any evidence of deliberate indifference on Defendants' part. There is nothing in the record that suggests that Defendants are being deliberately indifferent in not sending Plaintiff to a specialist for surgery of his hernias. As Dr. Shah testified and the medical records reflect, Plaintiff has small bilateral inguinal hernias. On the three occasions that Shah has seen Plaintiff he has been unable to palpitate the hernias. The Court finds Dr. Shah's testimony to be credible. There is no indication from a physical exam that Plaintiff's intestines are protruding through the hernias, even when pressure is added to the abdomen during a cough test, nor has Shah felt any weakness in the abdomen through the hernias. According to the Mayo Clinic, hernias do not require surgery unless they are enlarged, painful, or incarcerated, meaning the hernia cannot be pushed back into the abdomen and becomes trapped in the abdominal wall. *See* **May Clinic, Diseases and Conditions, Inguinal Hernia, http://www.mayoclinic.org/diseases-conditions/inguinal-hernia/symptoms-causes/dxc-20206367 (last visited August 2, 2016).** At the hearing, Shah testified that the hernia

was not palpable and the ultrasound records indicate that the hernias are small. Thus, there is no evidence to indicate that surgery is medically necessary for Plaintiff's hernia.

Plaintiff did testify that he is in extreme pain several times a week, which lasts several hours. Plaintiff testified that if he moves a certain way, it can cause the hernia to protrude or to be painful, and that the pain is sharp and lasts for several hours. However, the Court does not find Plaintiff's testimony to be credible on this point. Dr. Shah testified that small hernias can be painful but the pain would not last for the time span that Plaintiff testified to. The pain would either be constant or would be immediate and quick. But Plaintiff testified that he has pain which is immediate and then lasts for several hours after he pushes the bulge back into his abdomen.

Further, the evidence in the records suggests that Plaintiff is not suffering from the extreme pain that he testified to. There is no evidence in the medical records indicating that Plaintiff complained of extreme pain four to five times a week. While there is evidence that Plaintiff rated his pain, at its worse, as a 9 in both June and November of 2015 and described the pain as coming and going, there is no evidence that he continued to complain of pain between those two time periods. There is nothing in the records to suggest he complained of pain during that time period nor is there anything in the record to suggest that he continued to complain of severe pain after November 2015. Shah testified that Plaintiff indicated he had pain in January, but Plaintiff did not inform Shah that the pain was extreme or that he had the type of frequent, long lasting pain that Plaintiff testified to at the hearing. Shah also saw

Plaintiff the week prior to the hearing and there is no indication that he complained of the type of pain that he testified to. Plaintiff did testify that he spoke to a nurse in February 2016 about his pain but he was told that there was nothing that could be done for him. Plaintiff testified that because of this treatment he decided not to seek any additional care from the healthcare unit. First, the Court notes that the co-pay slip that Plaintiff provided to the Court does not indicate that the nurse told him that they do not treat hernias or that he was not charged a co-pay. In fact, the note provided is an authorization to pay which shows that Plaintiff paid $5.00 to be seen for "medical, dental, vision, and mental health care." (Doc. 48). There is no indication that he was seen on that day for his hernias or that he complained of pain.

Further, if Plaintiff was experiencing the type of pain that he testified to, the undersigned finds it not credible that Plaintiff simply did not report the pain. The fact that Plaintiff never sought any further care for this long lasting pain, which he was affected with allegedly several times a week, suggests that the pain was not as severe as Plaintiff testified to. Plaintiff admitted that he did not return to the healthcare unit after his February 9, 2016 meeting with a nurse because he believed that he would not get care. But the undersigned finds it unlikely that a person in the type of pain that Plaintiff complained of would not seek medical relief from the healthcare unit if the pain was as extreme as Plaintiff stated. Thus, the undersigned does not find Plaintiff's testimony about his pain to be credible.

## CONCLUSION AND RECOMMENDATION

Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for preliminary injunction (Doc. 26).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **September 1, 2016.**

**IT IS SO ORDERED**.
DATED: August 15, 2016.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge